UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| PATRICK WILKERSON, SR., | : | Case No. 3:24-cv-114 |
| Plaintiff, | : | |
| vs. | : | District Judge Michael J. Newman |
| | : | Magistrate Judge Peter B. Silvain, Jr. |
| MELANIE PHELPS-POWERS, *et al.*, | : | |
| Defendants. | : | |

## ORDER and REPORT AND RECOMMENDATION[1]

This case is before the Court upon *pro se* Plaintiff's Motion for Leave to Proceed *in forma pauperis* (Doc. #1) and for a *sua sponte* review of Plaintiff's Complaint pursuant to 28 U.S.C. § 1915(e)(2).

Plaintiff's Motion for Leave to Proceed *in forma pauperis* (Doc. #1) is **GRANTED**. However, for the reasons that follow, it is **RECOMMENDED** that the Court **DISMISS** any official capacity claims against Defendants Melanie Phelps-Powers and Lisa Bruder; **DISMISS** Claims 7 (Speedy Trial), 8 (Attorney-Client Privilege Violation), 9 (Right to Evidence), 10 (Cruel and Unusual Punishment), 12 (Substantive Due Process, Invasion of Privacy and Personal Autonomy), and 13 (Right to Petition, Equal Protection Violation); and **PERMIT** Claims 1-6, 11, and 14 to proceed.

### I. PLAINTIFF'S COMPLAINT

Plaintiff brings this action against Defendants Montgomery County Sheriff's Department Detective Melanie Phelps-Powers, assistant prosecuting attorney Lisa Bruder, defense attorney

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendation.

Lucas Wilder, and "complaining witness" Nakela McGhee. (Doc. #1-1, *PageID* #5). In the Complaint, Plaintiff alleges that Defendants conspired to deprive him of his rights under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. *Id*. at 4. Plaintiff enumerates these constitutional violation claims as follows:

- Claim 1: False Arrest under the Fourth Amendment
- Claim 2: Illegal Search and Seizure under the Fourth Amendment
- Claim 3: Malicious Prosecution under the Fourth Amendment
- Claim 4: Wrongful Detention under the Fourth Amendment
- Claim 5: Wrongful Investigation under the Fourth Amendment
- Claim 6: Takings Clause Violation under the Fifth Amendment
- Claim 7: Speedy Trial Violation under the Sixth Amendment
- Claim 8: Attorney-Client Privilege Violation under the Sixth Amendment
- Claim 9: Right to Evidence Violation under the Sixth Amendment
- Claim 10: Cruel and Unusual Punishment under the Fourteenth Amendment
- Claim 11: Due Process Violation under the Fourteenth Amendment
- Claim 12: Substantive Due Process, Invasion of Privacy and Personal Autonomy under the Fourth and Fourteenth Amendment
- Claim 13: Right to Petition, Equal Protection Violation under the First and Fourteenth Amendment
- Claim 14: Civil Conspiracy

*Id*. at 14-25.

Plaintiff alleges that the events giving rise to his claims began on May 24, 2021, when Defendant McGhee reported to the police that Plaintiff assaulted her. *Id*. at 6. Plaintiff was

subsequently arrested and charged with domestic violence as a misdemeanor in Montgomery County Court of Common Pleas Case No. 2021CR01728. *Id.* According to Plaintiff, Defendants Phelps-Powers, Bruder, and McGhee then conspired to fabricate evidence that Defendant McGhee was pregnant at the time of the assault. *Id.* As a result of this fabrication, Plaintiff was charged with domestic violence against a pregnant victim, a fifth-degree felony, and his misdemeanor charge was dismissed. *Id.* Plaintiff alleges that after he was misled by Defendant Bruder and his attorney Michael B. Miller (who is not a defendant in this case), he pleaded guilty to the charge. *Id.*

Plaintiff alleges that between May 24, 2021, and August 19, 2021, Defendant McGhee committed several felony offenses against him, including the unlawful sale of his vehicle. *Id.*

To cover up their fabrication of evidence and Defendant McGhee's felonies, Plaintiff claims that Defendants Phelps-Powers, Bruder, and McGhee then conspired to have Plaintiff arrested again and manufactured evidence prior to Plaintiff's arrest. *Id.* at 7. For instance, Plaintiff alleges that Defendants Phelps-Powers and Bruder reviewed email communications between himself and Defendant McGhee while he was in jail during Montgomery County Court of Common Pleas Case No. 2021CR01728. *Id.* at 8. According to Plaintiff, Defendants Phelps-Powers and Bruder altered the emails so that it would appear that Defendant McGhee had authorization to sell Plaintiff's vehicle. *Id.*

Thereafter, on October 12, 2021, Defendant McGhee made a second domestic violence complaint, and Plaintiff was charged with domestic violence and abduction in Case No. 2021CR03390. *Id.* at 7. According to Plaintiff, during his arrest, Defendant Phelps-Powers stole his iPhone with the intent to destroy communications between Plaintiff and Defendant McGhee that incriminated Defendants Phelps-Powers, Bruder, and McGhee. *Id.* at 7. Plaintiff claims that

3

Defendant Phelps-Powers subsequently agreed to return the phone to Plaintiff's family but instead utilized the passcode (obtained from Plaintiff's jail emails), illegally examined the contents, and deleted and destroyed exculpatory evidence from the phone. *Id.* at 7. Plaintiff alleges that unbeknownst to him at the time, Defendant Phelps-Powers also seized a smartwatch during his arrest. *Id.* at 8. Additionally, Plaintiff claims that Defendant McGhee stole his second iPhone that shared the iCloud account and text messages with the iPhone seized by Defendant Phelps-Powers. *Id.* Plaintiff asserts that although Defendants Phelps-Powers and Bruder knew the phones belonged to him, they, "through the misuse of chain of custody consent search paperwork," fabricated evidence that Defendant McGhee was the registered owner. *Id.* at 9. According to Plaintiff, Defendants Phelps-Powers and Bruder deleted the evidence exonerating Plaintiff of the charges from the phones and then "used the iPhone to send an iCloud account deletion request to destroy all backups of the data." *Id.* at 10.

Plaintiff met Defendant Wilder, his court-appointed defense attorney, on October 20, 2021, through jail emails. *Id.* at 9. Plaintiff alleges that although he immediately told Defendant Wilder about the illegal seizure of his phones, Defendant Wilder "made light of this information and kept the entirety of it off record." *Id.* In doing so, Plaintiff asserts that Defendant Wilder "assisted in concealing the knowingly false reports submitted to the courts by [Defendants Phelps-Powers, Bruder, and McGhee] …." *Id.* Further, Plaintiff alleges that Defendant Wilder, in collusion with the other Defendants, requested Plaintiff's iPhone passcode on November 16, 2021, so that Defendant Phelps-Powers would have access to it. *Id.* at 10. He later requested Plaintiff provide a second passcode to provide an alibi for Defendant Phelps-Powers. *Id.*

Plaintiff alleges that although Defendants tried to delete the emails requesting iCloud account deletion, the emails have since been recovered and are dated November 22, 2021. *Id.* at

4

10-11. According to Plaintiff, this shows that neither iPhone were disabled, and all four Defendants conspired to spoliate evidence and continue his malicious prosecution. *Id.* at 11.

Plaintiff claims that he later gave his email passwords to Defendant Wilder so that he could obtain screenshots Plaintiff took of the destroyed evidence. *Id.* at 11. However, according to Plaintiff, Defendant Wilder, in collusion with the other Defendants, deleted the screenshots from his email as well as other private and personal photos from Google Photos. *Id.*

Plaintiff further details that he received in discovery a "consent to search form" signed by Defendant McGhee falsely stating that the iPhone was hers and giving Defendant Phelps-Powers the power to possess and search Plaintiff's iPhone, dated November 5, 2021. *Id*. Plaintiff asserts that, although Defendant Phelps-Powers filed a report on that same day that the iPhone was disabled upon receipt, phone records would later reveal that the phone was accessed "until or about December 2021." *Id*.

Plaintiff further alleges that Defendant Wilder colluded with Defendants Bruder and Phelps-Powers by falsely stating to Plaintiff that he had uncovered exculpatory evidence in February 2022, when the evidence was known to Defendants Bruder, Phelps-Powers, and Wilder since "on or about December 28, 2021." *Id*. Additionally, Plaintiff contends that Defendant Wilder, on behalf of the state, perpetuated a false narrative that the Federal Bureau of Investigation ("FBI") possessed Plaintiff's iPhones. *Id*. Plaintiff alleges that this was also the point where Defendant Wilder disclosed that Defendant Phelps-Powers had seized Plaintiff's smartwatch, which Plaintiff had not known to be seized prior. *Id*. Plaintiff asserts that Defendant Wilder continued to misrepresent that he received emails from the FBI investigation, allowing Defendants Wilder and Bruder to violate Plaintiff's speedy trial right by extending his trial date beyond ninety days. *Id*. at 11-12. Finally, Plaintiff asserts that Defendants Wilder and Bruder "fabricated to the

5

court" that Plaintiff had an active probation holder, which also contributed to a speedy trial violation. *Id*. at 12.

## II. STANDARD OF REVIEW

In accordance with 28 U.S.C. § 1915(e)(2), the Court must dismiss Plaintiff's Complaint if his claims (1) are frivolous or malicious; (2) fail to state a claim upon which relief may be granted; or (3) seek monetary relief from a defendant who is immune from such relief. It is appropriate for the Court to conduct this review *sua sponte* prior to issuance of process "so as to spare prospective defendants the inconvenience and expense of answering such complaints." *Neitzke v. Williams*, 490 U.S. 319, 324 (1989).

In conducting this initial review, the Court accepts Plaintiff's allegations as true and construes them liberally in his favor. *See Donald v. Marshall*, No. 84-3231, 1985 WL 13183, at *1 (6th Cir. Apr. 5, 1985) (stating that, "[w]hen considering a *pro se* action for dismissal pursuant to 28 U.S.C. § 1915(d), the complaint should be liberally construed, and the allegations of the complaint must be taken as true and construed in favor of the plaintiff"). However, while *pro se* pleadings are "to be liberally construed" and are "held to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*), *pro se* plaintiffs must still satisfy basic pleading requirements. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). "To prevail on a § 1983 claim, a plaintiff must establish that a person acting under color of state law deprived the plaintiff of a right secured by the Constitution or laws of the United States." *Green v. Throckmorton*, 681 F.3d 853, 859-60 (6th Cir. 2012) (citing *Waters v. City of Morristown, Tenn.*, 242 F.3d 353 (6th Cir. 2001)).

### III. DISCUSSION

#### A. Official Capacity Claims

Plaintiff indicates his claims against Defendants Phelps-Powers and Bruder are in both their official capacities and their individual capacities.[2] However, Plaintiff's claims against these Defendants in an official capacity must be dismissed to the extent that Plaintiff seeks monetary damages. As the court in *Lloyd v. City of Streetsboro* comprehensively explained:

> A suit for damages against a state employee in his official capacity is a suit against the employing state agency, which is no different than a suit against the state itself. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (citing, e.g., *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985)). Absent an express waiver, a state is immune from damage suits under the Eleventh Amendment. The State of Ohio has not constitutionally nor statutorily waived its Eleventh Amendment immunity in the federal courts. The Eleventh Amendment bar extends to actions where the state is not a named party, but where the action is essentially one for the recovery of money from the state. A suit against defendants in their official capacities would, in reality, be a way of pleading the action against the entity of which defendants are agents. Thus, actions against state officials in their official capacities are included in this bar. ("[A]n official-capacity suit against a state official is deemed to be a suit against the state and is thus barred by the Eleventh Amendment, absent a waiver.").

No. 18-3485, 2018 WL 11298664, at *3 (6th Cir. Dec. 20, 2018) (internal citations and ellipses omitted). Therefore, as Plaintiff cannot sue Defendants Bruder and Phelps-Powers in their official capacities as a Montgomery County Police Department detective and Montgomery County Prosecutor's Office assistant prosecuting attorney, the undersigned **RECOMMENDS DISMISSAL** of any official capacity claims against these Defendants to the extent Plaintiff seeks monetary damages.

However, Plaintiff also seeks declaratory and injunctive relief against Defendants Bruder and Phelps-Powers. (Doc. #1-1, *PageID* #26). "An official capacity action seeking declaratory and

---

[2] The Court construes Plaintiff's reference to "unofficial capacities" as seeking claims against Defendants in their individual capacities. (Doc. #1-1, *PageID* #4).

7

injunctive relief constitutes an exception to sovereign immunity." *Petersmark v. Burgess*, No. 1:24-CV-604, 2024 WL 3648074, at *6 (W.D. Mich. Aug. 5, 2024) (citing *Ex Parte Young*, 209 U.S. 123, 159–60 (1908)). Although recognizing the exception to sovereign immunity, the Sixth Circuit has clarified that this exception only applies when "a complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

Plaintiff does not allege an ongoing violation of federal law or seek relief properly characterized as prospective; while detailing a conspiracy of false arrest and malicious prosecution before his May 2022 trial, Plaintiff does not allege that Defendants made or would make any further attempts infringing his constitutional rights after his acquittal in May 2022. (Doc. #1-1, *PageID* #s 13, 26). "Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again." *Petersmark*, 2024 WL 3648074, at *6 (citing *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). Therefore, the undersigned **RECOMMENDS DISMISSAL** of any official capacity claims against these Defendants for injunctive and declaratory relief.

### B. Sixth Amendment Violation of Speedy Trial (Claim 7)

Plaintiff alleges that Defendants Bruder and Wilder "colluded and conspired to violate [his] speedy trial rights to prolong his detention to further prosecution by misrepresenting to the courts that [he] had an active probation holder to deprive [him] of his entitled triple count provision, and delay [his] due process to extend his trial the allotted 90 days." (Doc. #1-1, *PageID* #20). The Sixth Amendment guarantees in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. "The purpose of the speedy-

8

trial guarantee is to protect the accused against oppressive pre-trial incarceration, the anxiety and concern due to unresolved criminal charges, and the risk that evidence will be lost or memories diminished." *Brown v. Romanowski*, 845 F.3d 703, 712 (6th Cir. 2017) (citing *Doggett v. United States*, 505 U.S. 647, 654 (1992)). In the context of criminal proceedings, the Supreme Court and the Sixth Circuit have held that "the sole remedy for a violation of the speedy trial right is dismissal of the charges." *Strunk v. United States*, 412 U.S. 434, 439–40 (1973); *Romanowski*, 845 F.3d at 712. As Plaintiff was acquitted of all charges, this remedy is not available to him. *See Montgomery County Clerk of Courts*, Case No. 2021CR03390, *Doc. ID* 36324606.

However, neither the Supreme Court nor the Sixth Circuit have expressly addressed whether civil monetary damages under § 1983 are available for Sixth Amendment speedy-trial violations. In a Sixth Circuit concurring opinion, Judge Sutton opined that "to the extent money damages under § 1983 are available *at all* for a speedy-trial violation, a claimant must show both elements. . . 'that the interval between accusation and trial has been excessive' and that [the] speedy trial right 'attaches only when a formal criminal charge is instituted and a criminal prosecution begins.'" *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 649 (Sutton, J., concurring) (citing *Doggett*, 505 U.S. 647 at 651-52; *United States v. MacDonald,* 456 U.S. 1, 6 (1982)) (emphasis added).

In this case, even if monetary damages are available under § 1983, Plaintiff has failed to state a claim for relief because he has not shown that "the interval between accusation and trial has been excessive." *Heyerman*, 680 F.3d at 649. Supreme Court and Sixth Circuit precedent establishes that "a delay must be sufficiently 'long' to trigger any other factor [of the speedy-trial violation analysis framework]." *United States v. Allen*, 86 F.4th 295, 304 (6th Cir. 2023) (citing *United States v. Loud Hawk*, 474 U.S. 302, 314 (1986); *Romanowski*, 45 F. 3d at 713-14). Delays

9

that are "'customary' delays during any litigation—such as a five-month delay—automatically pass muster under the Sixth Amendment." *Allen*, 86 F.4th 295 at 304 (citing *Doggett*, 505 U.S. at 652). However, "a delay longer than a year presumptively meets this 'threshold' requirement." *Id.*; *see also Doggett*, 505 U.S. at 652, n.1. According to the Montgomery County Court of Common Pleas public docket, Plaintiff was indicted on October 22, 2021, and acquitted by a jury on May 17, 2022, a six-month, twenty-five-day period. *See* Case No. 2021CR03390, *Doc. ID* #s 35832256, 36324606. This interval of time is nearer to a "customary delay during any litigation" than one presumptively long enough to trigger a speedy-trial violation analysis. Furthermore, Plaintiff has failed to allege any additional facts or factors that would indicate a violation may have occurred despite a relatively short period of time. Therefore, the undersigned **RECOMMENDS DISMISSAL** of this claim.

### C. Sixth Amendment Violation of Attorney-Client Privilege (Claim 8)

Plaintiff asserts a claim against Defendant Wilder for violation of attorney-client privilege under the Sixth Amendment. (Doc. #1-1, *PageID* #s 20-21). However, Plaintiff "cannot establish a Sixth Amendment violation that is currently cognizable in a § 1983 action" because the attorney-client privilege does not originate from the Constitution, but instead originates from the common law. *Horacek v. Seaman*, No. 08-10866, 2009 WL 2928546, at *10 (E.D. Mich. Sept. 10, 2009) (citing *Dye v. Hofbauer*, 197 Fed. Appx. 378, 383 (6th Cir. 2006). Therefore, Plaintiff's claim against Defendant Wilder for violation of the attorney-client privilege does not *per se* implicate the Sixth Amendment for purposes of a § 1983 action.

However, if the government intentionally intrudes into communications between a defense attorney and his client and the intrusion is "potentially or actually prejudicial to the defense in the criminal case," then the government's intrusion would "amount to a constitutional violation."

*Frazier v. Gardner,* No. 3:22-CV-00726, 2023 WL 2505894, at *3 (M.D. Tenn. Mar. 14, 2023) (citing *Weatherford v. Bursey*, 429 U.S. 545 (1977); *United States v. Steele*, 727 F.2d 580, 586 (6th Cir. 1984) ("Even where is an intentional intrusion by the government into the attorney-client relationship, prejudice to the defendant must be shown before any remedy is granted.")). Plaintiff alleges that Defendant Wilder obtained information from Plaintiff, gave that information to the prosecution, and colluded with the prosecution to destroy exculpatory evidence that was obtained through that information provided by Plaintiff. (Doc. #1-1, *PageID* #s 20-21). These allegations indicate that the prosecution impermissibly intruded into the client-attorney relationship. However, Plaintiff fails to demonstrate how prejudice resulted from that alleged intrusion. Assuming *arguendo* that the prosecution and defense did conspire to destroy exculpatory evidence, Plaintiff was acquitted of all charges at trial despite that interference. Therefore, the undersigned **RECOMMENDS DISMISSAL** of Plaintiff's claim of violation of attorney-client privilege against Defendant Wilder.

### D. Sixth Amendment "Violation of Right to Evidence" (Claim 9)

Plaintiff alleges that Defendants McGee, Phelps-Powers, Bruder, and Wilder all misrepresented, disabled, and destroyed evidence that he had a "right to that evidence used against him to charge and indict him for the now acquitted abduction charge." (Doc. #1-1, *PageID* #21). He further claims their actions violated his "confrontation right to the evidence used against him." *Id*.

The undersigned construes Plaintiff's allegation as one of a violation under *Brady v. Maryland,* 373 U.S. 83 (1963), as the evidence of Plaintiff's alleged true ownership of the cell phone may have been exculpatory to the abduction charge. Both the prosecution and law enforcement have obligations under *Brady*: the prosecution must provide exculpatory or

11

impeaching evidence to the defendant, and law enforcement must provide exculpatory or impeaching evidence to the prosecutor's office. *Carter v. City of Detroit*, 678 F. App'x 290, 293 (6th Cir. 2017). "To establish a *Brady* violation, [Plaintiff] bears the burden of proving: (1) the evidence at issue was favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) a state official suppressed the evidence, either willfully or inadvertently; and (3) the suppressed evidence was material such that prejudice ensued from its nondisclosure." *Id*. Notably, *Brady* is only invoked when the defendant is unaware of the exculpatory or impeaching evidence; "if the defendant knew or should have known the essential facts permitting him to take advantage of the information in question, or if the information was available to him from another source," *Brady* is not violated. *United States v. Graham*, 484 F.3d 413, 417 (6th Cir. 2007).

In this case, Plaintiff was aware of the exculpatory evidence—his true ownership of the iPhone used to substantiate the abduction charge. Furthermore, Plaintiff cannot establish the prejudice prong required for a *Brady* violation. Plaintiff acknowledges that he was acquitted of the abduction charge at trial, a favorable outcome. (Doc. #1-1, *PageID* #21). Therefore, the undersigned **RECOMMENDS DISMISSAL** of this claim.

### E. Fourteenth Amendment Cruel and Unusual Punishment (Claim 10)

Next, Plaintiff asserts a claim against Defendants Phelps-Powers, Bruder, and McGhee under the Fourteenth Amendment for cruel and unusual punishment. (Doc. #1-1, *PageID* #22); *see Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014) ("The Eighth Amendment protects prisoners from cruel and unusual punishment, and pretrial detainees are similarly protected under the Due Process Clause of the Fourteenth Amendment"). Plaintiff alleges that Defendants conspired to have him arrested and held in jail without bond. (Doc. #1-1, *PageID* #22). According to Plaintiff, while in jail, he was assaulted, forced to defend himself, and suffered injuries. *Id*.

12

Further, Plaintiff alleges that he could not seek the medical treatment he needed or desired and "endure[d] hostile and bare minimum treatment from indifferent medical staff." *Id.*

To the extent that Plaintiff's cruel and unusual punishment claim arises from his allegations of false arrest and false imprisonment, such allegations fail to state a cognizable Fourteenth Amendment claim of cruel and unusual punishment. *Fannon v. Patterson*, No. 3:13-CV-14, 2014 WL 4273337, at *5-6 (S.D. Ohio Aug. 29, 2014); *Platte v. Otsego Cnty. Sheriff's Dept.,* No. 08–CV–15146, 2009 WL 1313260, at *9 (E.D. Mich. May 12, 2009) (finding that, "even if [plaintiff] were considered a pretrial detainee ... he has not alleged any cruel or unusual conduct beyond simply being charged, arrested, and arraigned, which fails to state a claim").

Furthermore, Plaintiff does not allege that any Defendant engaged in any particular act of violence against him while he was detained. As a result, Plaintiff's allegations fail to state a plausible claim upon which relief can be granted. *Fannon,* 2014 WL 4273337, at *5-6 (citing *Marcilis v. Twp. of Redford,* 693 F.3d 589, 596 (6th Cir.2012) (stating that a complaint fails to state a claim for relief in the absence of allegations "that particular defendants performed the acts that resulted in a deprivation of [plaintiff's] constitutional rights" because simply "'lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct'" fails "'to satisfy [the] minimum standard' that 'a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests'"). Therefore, the undersigned **RECOMMENDS DISMISSAL** of this claim.

### F. Invasion of Privacy (Claim 12)

Plaintiff alleges that Defendants McGhee, Bruder, and Phelps-Powers violated his sexual privacy rights when they conspired to illegally seize his iPhone that contained explicit images of himself and his partners. (Doc. #1-1, *PageID* #24). "The Sixth Circuit requires a plaintiff pleading

13

a § 1983 claim to establish that: (1) the defendant[s] acted under the color of state law; and (2) the defendant[s'] offending conduct deprived plaintiff of a federally-guaranteed right." *Pippin v. City of Reynoldsburg*, No. 2:17-CV-598, 2019 WL 4738014, at *11 (S.D. Ohio Sept. 27, 2019) (quoting *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008)). The Supreme Court has recognized two types of privacy rights in its precedent: the "independence in making certain kinds of important decisions" and the "interest in avoiding disclosure of personal matters." *Whalen v. Roe*, 429 U.S. 589, 599-600 (1977). However, this Circuit has "rejected the idea there is a general constitutional right of nondisclosure of personal information … any constitutional right to privacy must be restricted to those personal rights that can be deemed fundamental or implicit in the concept of ordered liberty." *Jenkins v. Rock Hill Loc. Sch. Dist.*, 513 F.3d 580, 591 (6th Cir. 2008) (citing *J.P. v. DeSanti*, 653 F.2d 1080, 1091 (6th Cir. 1981); *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1062 (6th Cir. 1988)).

Plaintiff's allegations would potentially fall within "the interest in avoiding disclosure of personal matters" as he alleges Defendants McGhee, Bruder, and Phelps-Powers seized a phone with sexually explicit images of himself and his partners. (Doc. #1-1, *PageID* #24). However, Plaintiff has not alleged that Defendants publicly disseminated this information or submitted this information as evidence for his trial, which would potentially constitute a privacy violation. *See Bloch v. Ribar*, 156 F.3d 673, 685-686 (6th Cir. 1998) (concluding that a rape victim has a constitutionally protected right to privacy against intimate details of the crime being released to the press); *Mangels v. Pena*, 789 F.2d 836, 839 (10th Cir. 1986) ("Information is constitutionally protected when a legitimate expectation exists that it will remain confidential while in the state's possession.").

14

Plaintiff's case more closely aligns with the plaintiff in *Doe v. Wigginton*, a prisoner who alleged that his constitutional right to privacy was violated when a prison official discovered his HIV-positive status from his medical records. 21 F.3d 733, 740 (6th Cir. 1994). Although others were present when the prison official proceeded to discuss the plaintiff's HIV-positive status with the plaintiff, and the plaintiff speculated that others may have learned his status from the official, the Sixth Circuit found that no constitutional right to privacy was implicated by these facts. *Id*. at 736, 740. As Plaintiff has not alleged that the explicit images of himself and his partners on his seized phone were publicly disseminated or used as evidence for his trial, the undersigned **RECOMMENDS** that Plaintiff's invasion of privacy claim be **DISMISSED**.

### G. First/Fourteenth Amendment Right to Petition/Equal Protection (Claim 13)

Plaintiff alleges that Defendants Bruder and Powers interfered with his First Amendment "right to petition the government for redress of his criminal grievance against McGhee, regarding the theft of his motor vehicle." Doc. #1-1, *PageID* #25. He claims that their interference "caused the dismissal and burial of his criminal complaint against McGhee …." *Id*. Further, Plaintiff alleges that Defendants Bruder and Powers "violated [his] right to equal protection" under the Fourteenth Amendment. *Id.*

While individuals possess a First Amendment right to petition the government for a redress of grievances, this right does not encapsulate "the prosecution or non-prosecution of another." *Stevens v. Elsman*, No. 1:25-CV-271, 2025 WL 1084173, at *4 (W.D. Mich. Mar. 17, 2025), *report and recommendation adopted*, No. 1:25-CV-271, 2025 WL 1078961 (W.D. Mich. Apr. 10, 2025) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *see also Leeke v. Timmerman*, 454 U.S. 83, 86-87 (1981)). A private plaintiff cannot force a criminal prosecution because the "authority to initiate a criminal complaint rests exclusively with state and federal prosecutors." *See*

15

*Collyer v. Darling,* 98 F.3d 211, 222 (6th Cir.1996); *Mercer v. Lexington Fayette Urban County Gov't.,* 52 F.3d 325 (6th Cir.1995).

In this case, Plaintiff 's allegation that his criminal complaint against Defendant McGhee was dismissed and "buried" by Defendants Bruder and Powers does not implicate his First Amendment right to petition. Doc. #1-1, *PageID* #25. Plaintiff does not have a "judicially cognizable interest" in the prosecution of Defendant McGhee. *Linda R.S.*, 410 U.S. at 619. Furthermore, "dismissal" indicates that Plaintiff's complaint was filed; while Plaintiff has a right to seek redress of the courts, he does not have a right to a pursued prosecution against another or a legal outcome favorable to him. Therefore, the undersigned **RECOMMENDS** that Plaintiff's right to petition claim be **DISMISSED**.

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To sufficiently plead an equal protection claim, the plaintiff "must allege facts that support his allegation that others were treated differently than he was, and he must allege facts that would support the inference that those who were treated differently were similarly situated in all relevant respects." *Petersmark v. Burgess*, No. 1:24-CV-604, 2024 WL 3648074, at *17–18 (W.D. Mich. Aug. 5, 2024) (citing *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 460 (6th Cir. 2011)). Without these supporting facts of disparate treatment, an equal protection claim fails.

In this case, Plaintiff has not alleged any supporting facts of disparate treatment. (Doc. #1-1, *PageID* #25). He does not state that any other pretrial detainees were permitted to file criminal complaints while he was not, or that he was treated differently in any other respect from other pretrial detainees. Therefore, as disparate treatment is a necessary element for an equal protection

16

claim, the undersigned **RECOMMENDS** that Plaintiff's claim for an equal protection violation be **DISMISSED**.

### H. Claims 1-6, 11, and 14

In his Complaint, Plaintiff alleges false arrest, illegal search and seizure, malicious prosecution, wrongful detention, wrongful investigation, a Takings Clause violation, a due process violation, and civil conspiracy. (Doc. #1-1, *PageID* #s 14-20, 23, 25). While the undersigned does not make any assessment or express any view of the merits of these claims, the undersigned finds that Plaintiff has alleged sufficient facts to **RECOMMEND** that these claims **PROCEED** against the named defendants under each claim.

## IV. CONCLUSION

As set forth above, 28 U.S.C. 1915(e)(2) permits *sua sponte* screening and dismissal of a civil action "at any time if the court determines that" the action is "frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief" from an immune defendant. For the reasons set forth above, the undersigned **RECOMMENDS** that the Court **DISMISS** Plaintiff's official capacity claims against Defendants Phelps-Powers and Bruder; **DISMISS** Plaintiff's Claims 7-10, 12, and 13; and **PERMIT** Plaintiff's Claims 1-6, 11 and 14 to proceed.

Accordingly, and having been advised by the Clerk of Courts that Plaintiff has already submitted the necessary service forms, the United States Marshal is **ORDERED** to make service of process in this case under Fed. R. Civ. P. 4(c)(3). All costs of service shall be advanced by the United States.

It is further **ORDERED** that Plaintiff shall inform the Court promptly of any changes in Plaintiff's address which may occur during the pendency of this lawsuit.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Motion for Leave to Proceed *in forma pauperis* (Doc. #1) is **GRANTED**; and

2. The United States Marshal make service of process in this case under Fed. R. Civ. P. 4(c)(3). All costs of service shall be advanced by the United States.

**IT IS THEREFORE RECOMMENDED THAT**:

1. The Court **DISMISS** Plaintiff's official capacity claims against Defendants Melanie Phelps-Powers and Lisa Bruder;

2. The Court **DISMISS** Claims 7-10, 12, and 13; and

3. The Court **PERMIT** Claims 1-6, 11 and 14 to proceed.

June 24, 2025

*s/ Peter B. Silvain, Jr.*
Peter B. Silvain, Jr.
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).